| | |
|---|---|
| MIGUEL ROSALES, Booking #24744369, <br><br> Plaintiff, <br><br> v. <br><br> M. MARTINEZ, County Jail Nurse, et al., <br><br> Defendants. | Case No.: 25-cv-00841-RSH-MMP <br><br> **ORDER:** <br><br> **(1) GRANTING MOTION TO PROCEED IN FORMA PAUPERIS** <br><br> **(2) DENYING MOTION FOR APPOINTMENT OF COUNSEL** <br><br> **AND** <br><br> **(3) DIRECTING U.S. MARSHAL TO EFFECT SERVICE OF PROCESS PURSUANT TO 28 U.S.C. § 1915(d) AND Fed. R. Civ. P. 4(c)(3)** <br><br> [ECF Nos. 2, 3] |

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

Plaintiff Miguel Rosales, proceeding without counsel while detained at the San Diego Central Jail ("SDCJ"), has filed a civil rights complaint pursuant to 42 U.S.C. § 1983 ECF No. 1. Plaintiff claims two SDCJ nurses failed to respond to his complaints of chest pain and difficulty breathing for two consecutive days in November 2024, and he required emergency transport to the emergency room at an outside hospital as a result. *Id.* at 2–4.

Plaintiff has not paid the filing fee required by 28 U.S.C. § 1914(a), but instead has filed a motion to proceed *in forma pauperis* ("IFP") pursuant to 28 U.S.C. § 1915(a). ECF No. 2. He also requests appointment of counsel pursuant to 28 U.S.C. § 1915(e)(1). ECF No. 3.

For the reasons explained, the Court grants Plaintiff's motion to proceed IFP, denies his motion for appointment of counsel, screens his complaint pursuant to 28 U.S.C. §§ 1915(e)(2) and 1915A(a), and directs the U.S. Marshal to effect service of process on his behalf pursuant to 28 U.S.C. § 1915(d) and Fed. R. Civ. P. 4(c)(3).

## I.    MOTION TO PROCEED IFP

All parties instituting any civil action, suit or proceeding in a district court of the United States, except an application for writ of habeas corpus, must pay a filing fee of $405.[1] *See* 28 U.S.C. § 1914(a). The action may proceed despite a failure to pay the entire fee at the time of filing only if the court grants the Plaintiff leave to proceed IFP pursuant to 28 U.S.C. § 1915(a). *See Andrews v. Cervantes*, 493 F.3d 1047, 1051 (9th Cir. 2007); *cf. Hymas v. U.S. Dep't of the Interior*, 73 F.4th 763, 765 (9th Cir. 2023) ("[W]here [an] IFP application is denied altogether, Plaintiff's case [cannot] proceed unless and until the fee[s] [a]re paid.").

"While the previous version of the IFP statute granted courts the authority to waive fees for any person 'unable to pay[,]' … the PLRA [Prison Litigation Reform Act] amended the IFP statute to include a carve-out for prisoners." *Hymas*, 73 F.4th at 767. Namely, under the current version of the IFP statute, "if a prisoner brings a civil action or files an appeal in forma pauperis, the prisoner 'shall be required to pay the full amount of a filing fee.'" *Id.* (quoting 28 U.S.C. § 1915(b)(1)). Section 1915(b) "provides a structured timeline for collecting this fee." *Id.* (citing 28 U.S.C. § 1915(b)(1)-(2)).

---

[1] In civil actions except for applications for a writ of habeas corpus, civil litigants bringing suit must pay the $350 statutory fee in addition to a $55 administrative fee. *See* 28 U.S.C. § 1914(a) (Judicial Conference Schedule of Fees, District Court Misc. Fee Schedule, § 14). However, the $55 administrative fee does not apply to persons granted leave to proceed IFP. *Id.*

To proceed IFP, prisoners must "submit[] an affidavit that includes a statement of all assets [they] possess[,]" as well as a "certified copy of the[ir] trust fund account statement (or institutional equivalent) for … the 6-month period immediately preceding the filing of the complaint." 28 U.S.C. § 1915(a)(1), (2); *Andrews v. King*, 398 F.3d 1113, 1119 (9th Cir. 2005). Using this financial information, the court "shall assess and when funds exist, collect, . . . an initial partial filing fee," which is "calculated based on 'the average monthly deposits to the prisoner's account' or 'the average monthly balance in the prisoner's account' over a 6-month term; the remainder of the fee is to be paid in 'monthly payments of 20 percent of the preceding month's income credited to the prisoner's account.'" *Hymas*, 73 F.4th at 767 (quoting 28 U.S.C. § 1915(b)(1)-(2)). Thus, while prisoners may qualify to proceed IFP without having to pay the statutory filing fee in one lump sum, they nevertheless remain obligated to pay the full amount due in monthly payments. *See Bruce v. Samuels*, 577 U.S. 82, 84 (2016); 28 U.S.C. § 1915(b)(1) & (2); *Taylor v. Delatoore*, 281 F.3d 844, 847 (9th Cir. 2002).

Plaintiff's IFP application complies with both 28 U.S.C. § 1915(a)(1) and (2). In support, he has submitted a copy of his San Diego Sheriff's Department Account Activity statement as well as a prison certificate issued by a Sheriff's Detentions Department Lieutenant. *See* ECF No. 2 at 6–7; *see also* S.D. Cal. CivLR 3.2; *Andrews*, 398 F.3d at 1119. These statements show that while Plaintiff had an average monthly deposit of $96.66 to his account, he had an available balance of only $.07 to his credit at the time of filing. ECF No. 2 at 6, 7.

Accordingly, the Court **GRANTS** Plaintiff's motion to proceed IFP and assesses no initial partial filing fee pursuant to 28 U.S.C. § 1915(b)(1). *See* 28 U.S.C. § 1915(b)(4) (providing that "[i]n no event shall a prisoner be prohibited from bringing a civil action or appealing a civil action or criminal judgment for the reason that the prisoner has no assets and no means by which to pay [an] initial partial filing fee"); *Taylor*, 281 F.3d at 850 (finding that 28 U.S.C. § 1915(b)(4) acts as a "safety-valve" preventing dismissal of a prisoner's IFP case based solely on "failure to pay . . . due to the lack of funds available to

him when payment is ordered"). The SDCJ, or any agency later having custody, must hereafter collect the full balance of the $350 total fee owed in this case and forward payments to the Clerk of Court as provided by 28 U.S.C. § 1915(b)(2).

## II.   MOTION TO APPOINT COUNSEL

Plaintiff also asks the Court to appoint him counsel, because he is "not in a position mentally or health-wise to defend a complex lawsuit" against "experienced attorneys." ECF No. 3 at 1–2. Nonetheless, "[t]here is no constitutional right to appointed counsel in a § 1983 action." *Rand v. Rowland*, 113 F.3d 1520, 1525 (9th Cir. 1997) (citing *Storseth v. Spellman*, 654 F.2d 1349, 1353 (9th Cir. 1981)); *see also Hedges v. Resolution Trust Corp. (In re Hedges)*, 32 F.3d 1360, 1363 (9th Cir. 1994) ("[T]here is no absolute right to counsel in civil proceedings.") (citation omitted). Federal courts do not have the authority "to make coercive appointments of counsel." *Mallard v. United States District Court*, 490 U.S. 296, 310 (1989); *see also United States v. $292,888.04 in U.S. Currency*, 54 F.3d 564, 569 (9th Cir. 1995).

Districts courts have discretion pursuant to 28 U.S.C. § 1915(e)(1) to "request" that an attorney represent indigent civil litigants upon a showing of "exceptional circumstances." *See Agyeman v. Corrections Corp. of America*, 390 F.3d 1101, 1103 (9th Cir. 2004); *Rand*, 113 F.3d at 1525. A finding of exceptional circumstances requires "an evaluation of the likelihood of the plaintiff's success on the merits and an evaluation of the plaintiff's ability to articulate his claims 'in light of the complexity of the legal issues involved.'" *Agyeman*, 390 F.3d at 1103 (quoting *Wilborn v. Escalderon*, 789 F.2d 1328, 1331 (9th Cir. 1986)); *see also Terrell v. Brewer*, 935 F.2d 1015, 1017 (9th Cir. 1991).

The Court agrees that trained counsel might be better suited to present evidence on his behalf and to defend his interests. Indeed, any pro se litigant "would be better served with the assistance of counsel." *Rand*, 113 F.3d at 1525 (citing *Wilborn*, 789 F.2d at 1331). However, so long as a pro se litigant, like Plaintiff in this case, is able to "articulate his claims against the relative complexity of the matter," the "exceptional circumstances" which might *require* the appointment of counsel do not exist. *Id.* (finding no abuse of

discretion under 28 U.S.C. § 1915(e) when district court denied appointment of counsel despite fact that pro se prisoner "may well have fared better–particularly in the realms of discovery and the securing of expert testimony."); *see also Bradley-Zayas v. Robinson,* No. 3:22-CV-05307-DGE, 2022 WL 11212570, at *1 (W.D. Wash. Oct. 19, 2022) (denying appointment of counsel under § 1915(e)(1) where prisoner alleged he suffered from a mental health impairment but failed to show that impairment limited "his ability to articulate his claims").

As currently pleaded, Plaintiff's complaint demonstrates he is able to articulate essential facts supporting his inadequate medical care claims. In fact, Plaintiff has attached a sworn declaration attesting as to the incident and claims forming the basis of his suit, which also appears to have been submitted as testimony in a class action lawsuit concerning the conditions of confinement at the SDCJ currently pending before Judge Battaglia in *Dunsmore v. San Diego County Sheriff's Dept., et al.*, Civil Case No. 3:20-cv-00406-AJB-DDL (S.D. Cal. Jan. 21, 2025) (ECF No. 796-19 at 2–3). ECF No. 1 at 8–10. Thus, at least at this initial pleading stage, the Court finds Plaintiff appears to have an adequate grasp of the facts supporting his inadequate medical care claims, which are common to prison litigation and relatively straightforward. *See Terrell*, 935 F.2d at 1017; *Kinford v. Moyal*, No. 2:18-CV-01890-RFB-EJY, 2021 WL 811449, at *2 (D. Nev. Jan. 22, 2021) (noting prisoner's deliberate indifference to serious medical needs claims are not "legally complex"). In fact, as discussed below, Plaintiff's complaint alleges inadequate medical care claims sufficient to survive the initial screening required by 28 U.S.C. §§ 1915(e)(2) and 1915A. *See e.g., Cisneros v. Muniz,* No. 1:22-CV-01601-HBK (PC), 2024 WL 1996210, at *2 (E.D. Cal. May 6, 2024) (finding no exceptional circumstances requiring appointment of counsel where prisoner "capably filed motions and a second amended complaint that survived screening"). Therefore, because he has not satisfied the high standards required to justify the appointment of counsel under 28 U.S.C. § 1915(e)(1), the Court **DENIES** Plaintiff's motion without prejudice [ECF No. 3].

//

## III. SCREENING PURSUANT TO 28 U.S.C. §§ 1915(e)(2)(B) & 1915A(b)

### A. Standard of Review

Because Plaintiff is a prisoner proceeding IFP, his complaint is subject to a preliminary review pursuant to 28 U.S.C. §§ 1915(e)(2) and 1915A(a). *See* 28 U.S.C. § 1915(h) (defining "prisoner" as "any person incarcerated or detained in any facility who is accused of, or convicted for, or adjudicated delinquent for, violations of criminal law or the terms or conditions of parole, probation, pretrial release, or diversionary program"). Under these statutes, the Court must *sua sponte* dismiss a prisoner's IFP complaint, or any portion of it, which is frivolous, malicious, fails to state a claim, or seeks damages from defendants who are immune. *See Lopez v. Smith*, 203 F.3d 1122, 1126–27 (9th Cir. 2000) (en banc) (discussing 28 U.S.C. § 1915(e)(2)); *Rhodes v. Robinson*, 621 F.3d 1002, 1004 (9th Cir. 2010) (discussing 28 U.S.C. § 1915A(b)).

"The standard for determining whether a plaintiff has failed to state a claim upon which relief can be granted under § 1915(e)(2)(B)(ii) is the same as the Federal Rule of Civil Procedure 12(b)(6) standard for failure to state a claim." *Watison v. Carter*, 668 F.3d 1108, 1112 (9th Cir. 2012); *see also Wilhelm v. Rotman*, 680 F.3d 1113, 1121 (9th Cir. 2012) (Section 1915A screening "incorporates the familiar standard applied in the contest of failure to state a claim under Federal Rule of Civil Procedure 12(b)(6)"). Federal Rules of Civil Procedure 8 and 12(b)(6) together require a complaint to "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Detailed factual allegations are not required, but "[t]hreadbare recitals of the elements of a cause of action supported by mere conclusory statements, do not suffice." *Id.* The "mere possibility of misconduct" or unadorned, "the defendant-unlawfully-harmed me accusation[s]" fall short of meeting this plausibility standard. *Id.* at 678–79. And while the court "ha[s] an obligation where the petitioner is pro se, particularly in civil rights cases, to construe the pleadings liberally and to afford the petitioner the benefit of any doubt," *Hebbe v. Pliler*, 627 F.3d 338, 342 & n.7 (9th Cir. 2010) (citing *Bretz v. Kelman*, 773 F.2d

1026, 1027 n.1 (9th Cir. 1985)), it may not "supply essential elements of claims that were not initially pled." *Ivey v. Bd. of Regents of the Univ. of Alaska*, 673 F.2d 266, 268 (9th Cir. 1982).

### B. Plaintiff's Allegations

While detained at SDCJ on November 16, 2024, Plaintiff claims he alerted Nurse C. Banguilan, who was dispensing medication during the evening rounds, "multiple times" that he "felt short of breath and dizzy" and was experiencing chest pain. ECF No. 1 at 3, 8. Plaintiff asked Banguilan to check his blood pressure and insisted it "could not wait." *Id.* at 3. Banguilan indicated she would return with a blood pressure device, "but she never did." *Id.* at 3, 9.

The following day, Plaintiff continued to feel short of breath and dizzy, and "asked medical staff at least four times" to check his blood pressure. *Id.* at 9. During medication rounds, Plaintiff contends he also told Nurse M. Martinez he was having a "medical emergency" and his symptoms were worse than the day before. *Id.* at 4, 8. Martinez also "said she would return to check [his] blood pressure," but did not. *Id.* at 4.

That evening, Plaintiff experienced "sharp pains in [his] chest," his eye was twitching, he started drooling, and he "was having trouble standing without falling over." *Id.* at 9. Fearing he was having a heart attack, Plaintiff "tried to use the intercom to alert an officer, but no one answered." *Id.* During the next hourly check, however, an unidentified officer observed he was not feeling well and escorted him to the 3d Floor Medical Unit. There, after his blood pressure reading "hit 181," an unidentified nurse called 911 and he was transported to the emergency room at UCSD Medical Center. *Id.* at 4, 9. The emergency room doctor told Plaintiff he "was about to have a stroke," and prescribed medication to lower his blood pressure. *Id.* at 9.

Plaintiff now seeks $150,000 in general and punitive damages against Nurses Banguilan and Martinez on the grounds they violated his right to adequate medical care. *Id.* at 3–4, 7.

//

## C. Discussion

"[Section] 1983 'is not itself a source of substantive rights,' but merely provides 'a method for vindicating federal rights elsewhere conferred.'" *Graham v. Connor*, 490 U.S. 386, 393–94 (1989) (citation omitted). "To state a claim under § 1983, a plaintiff must allege two essential elements: (1) that a right secured by the Constitution or laws of the United States was violated, and (2) that the alleged violation was committed by a person acting under the color of State law." *Benavidez v. Cnty. of San Diego*, 993 F.3d 1134, 1144 (9th Cir. 2021) (citing *Long v. County of Los Angeles*, 442 F.3d 1178, 1185 (9th Cir. 2006)).

"[M]edical care claims brought by pretrial detainees … 'arise under the Fourteenth Amendment's Due Process Clause, rather than the Eighth Amendment's Cruel and Unusual Punishment Clause.'" *Gordon v. Cnty of Orange*, 888 F.3d 1118, 1124 (9th Cir. 2018) (quoting *Castro v. Cnty of Los Angeles*, 833 F.3d 1060, 1069–70 (9th Cir. 2016) (en banc)); *Bell v. Wolfish*, 441 U.S. 520, 535 n.16 (1979)).[2]

//

---

[2] According to the San Diego County Sheriff's Department's website, Plaintiff was booked into custody on October 21, 2024, approximately one month before the incidents alleged in his Complaint. As of July 9, 2025, he has yet to be sentenced. *See* https://apps.sdsheriff.net/wij/wij.aspx (Rosales, Miguel) (last viewed July 9, 2025); *United States v. Basher*, 629 F.3d 1161, 1165 n.2 (9th Cir. 2011) (taking judicial notice of Bureau of Prisons' inmate locator); *Graham v. Los Angeles Cty.*, No. 2:18-CV-01126-PA (GJS), 2018 WL 6137155, at *2 (C.D. Cal. May 4, 2018) (taking judicial notice of County Sheriff Department's website and inmate locator function pursuant to Fed. R. Civ. P. 201, "which provides some information regarding the status of inmates housed in ... County jail[]" for purposes of initial screening pursuant to 28 U.S.C. § 1915A). "[W]hen determining whether the Eighth or Fourteenth Amendment governs an inmate's claim, '[t]he critical juncture is conviction, either after trial or . . . by plea, at which point the state acquires the power to punish and the Eighth Amendment is implicated.'" *Resnick v. Hayes*, 213 F.3d 443, 448 (9th Cir. 2000) (quoting *Berry v. City of Muskogee*, 900 F.2d 1489, 1493 (10th Cir. 1990)); *Hughes v. Rodriguez*, 31 F.4th 1211, 1220 (9th Cir. 2022) ("After conviction, 'the Eighth Amendment, which is specifically concerned with the unnecessary and wanton infliction of pain in penal institutions, serves as the primary source of substantive protection.'") (quoting *Whitley v. Albers*, 475 U.S. 312, 327 (1986)).

To prevail, a pretrial detainee raising a Fourteenth Amendment inadequate medical care claim must show:

> (i) the defendant made an intentional decision with respect to the conditions under which the plaintiff was confined; (ii) those conditions put the plaintiff at substantial risk of suffering serious harm; (iii) the defendant did not take reasonable available measures to abate that risk, even though a reasonable official in the circumstances would have appreciated the high degree of risk involved—making the consequences of the defendant's conduct obvious; and (iv) by not taking such measures, the defendant caused the plaintiff's injuries.

*Gordon*, 888 F.3d at 1125. The third element requires the defendant's conduct to be "objectively unreasonable," a test that turns on the facts and circumstances of each particular case. *Id.* (citations omitted). The "'mere lack of due care by a state official' does not deprive an individual of life, liberty, or property under the Fourteenth Amendment." *Castro*, 833 F.3d at 1071 (citation omitted). "Thus, the plaintiff must 'prove more than negligence but less than subjective intent—something akin to reckless disregard.'" *Gordon*, 888 F.3d at 1125 (quoting *Castro*, 833 F.3d at 1071).

As alleged and liberally construed, the Court finds Plaintiff's factual allegations involving Nurses Banguilan and Martinez sufficient to survive screening under 28 U.S.C. §§ 1915(e)(2)(B) and 1915A(b). *See Wilhelm,* 680 F.3d at 1121; *Gordon*, 888 F.3d at 1125. Plaintiff alleges he told both nurses he was dizzy, short of breath, experiencing chest pain, and needed his blood pressure monitored over a course of two days. ECF No. 1 at 3–4, 9. *Gordon*'s "substantial risk of serious harm" prong is met if a pretrial detainee alleges he faced an objectively "serious medical need." *Russell v. Lumitap*, 31 F.4th 729, 739 (9th Cir. 2022); *see also Narcisse v. Tafesse*, No. 5:16-CV-00682-EJD, 2019 WL 4417635, at *5 (N.D. Cal. Sept. 16, 2019) (noting that *Gordon* focused only on the requisite state of mind for a defendant's conduct and did not eliminate the requirement that pretrial detainees also show the existence of a serious medical need). "[R]epeated requests for attention, complain[ts] of breathing problems, pain, and asthma attacks," *Clement v. Gomez*, 298 F.3d 898, 905 (9th Cir. 2002), are sufficient to demonstrate a "substantial risk of serious harm"

under *Gordon* because a "failure to treat [these] condition[s] could result in further significant injury or the unnecessary and wanton infliction of pain." *Russell*, 31 F.4th at 739 n.37 (citation omitted). Here, Plaintiff contends he reported his symptoms to both nurses on November 16 and 17, 2024, and that both failed to make any attempt to alleviate his symptoms, address his breathing difficulties, or monitor his blood pressure. ECF No. 1 at 3–4, 9. Therefore, at the screening stage, Plaintiff's claim for relief based on Banguilan and Martinez's alleged "reckless disregard" is sufficient. *Gordon*, 888 F.3d at 1125 (Fourteenth Amendment objective deliberate indifference element satisfied if official fails to "take reasonable available measures to abate [substantial] risk"); *Iqbal,* 556 U.S. at 678.

Accordingly, the Court will direct the U.S. Marshal to effect service of process upon Defendants M. Martinez and C. Banguilan on his behalf. *See* 28 U.S.C. § 1915(d) ("The officers of the court shall issue and serve all process, and perform all duties in [IFP] cases."); Fed. R. Civ. P. 4(c)(3) ("[T]he court may order that service be made by a United States marshal or deputy marshal . . . if the plaintiff is authorized to proceed in forma pauperis under 28 U.S.C. § 1915.").

## IV. CONCLUSION

Accordingly, for the reasons discussed, the Court:

(1) **GRANTS** Plaintiff's Motion to Proceed IFP [ECF No. 2].

(2) **ORDERS** the Facility Commander of the SDCJ, or his designee, to garnish from Plaintiff's trust account the full $350 filing fee owed for this case, and to forward in monthly payments an amount equal to twenty percent (20%) of the preceding month's income to the Clerk of the Court each time the amount in his account exceeds $10 pursuant to 28 U.S.C. § 1915(b)(2).

(3) **DIRECTS** the Clerk of the Court to serve a copy of this Order on the Facility Commander, San Diego Central Jail, 1173 Front Street, San Diego, California 92101.

(4) **DENIES** Plaintiff's Motion for Appointment of Counsel pursuant to 28 U.S.C. § 1915(e)(1) without prejudice [ECF No. 3].

(5)     **DIRECTS** the Clerk to issue a summons as to Plaintiff's Complaint [ECF No. 1], upon Defendants M. Martinez and C. Banguilan and forward it to Plaintiff along with two blank U.S. Marshal Form 285s. In addition, the Clerk will provide Plaintiff with a copy of this Order, certified copies of his Complaint, and the summons so that he may serve them upon Defendants Martinez and Banguilan. Upon receipt of the Clerk's "IFP Package," Plaintiff must complete the U.S. Marshal Form 285s as completely and accurately as possible, include a physical address where each Defendant may found and subject to service, *see* S.D. Cal. Civ. L.R. 4.1.c, and return them to the United States Marshal according to the instructions the Clerk provides in the letter accompanying his IFP package.

(6)     **ORDERS** the U.S. Marshal to serve a copy of Plaintiff's Complaint and summons upon Defendants Martinez and Banguilan as directed by Plaintiff on the USM Form 285s, and to file executed waivers of personal service upon each Defendant with the Clerk of Court as soon as possible after their return. Should Defendants fail to return the U.S. Marshal's requests for waiver of personal service within 90 days, the U.S. Marshal must instead file the completed, but unexecuted Form USM 285 Process Receipt and Returns with the Clerk of the Court, include the date the summons, Complaint and requests for waiver were mailed, and indicate why service upon each Defendant was unsuccessful. All costs of service will be advanced by the United States; however, if Defendants are located within the United States, and fail without good cause to sign and return the waivers requested by the Marshal on Plaintiff's behalf, the Court will impose upon Defendants any expenses later incurred in making personal service. *See* 28 U.S.C. § 1915(d); Fed. R. Civ. P. 4(c)(3).

(7)     **ORDERS** Defendants Martinez and Banguilan, once served, to respond to Plaintiff's complaint, and any subsequent pleading Plaintiff may file in this matter in which they are named as a Defendants, within the time provided by the applicable provisions of Federal Rule of Civil Procedure 12(a) and 15(a)(3). *See* 42 U.S.C. § 1997e(g)(2) (stating that while a defendant may "waive the right to reply to any action brought by a prisoner

confined in any jail, prison, or other correctional facility under section 1983," once the Court has conducted its *sua sponte* screening pursuant to 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and thus, has made a preliminary determination based on the face on the pleading that Plaintiff has a "reasonable opportunity to prevail on the merits," defendant is required to respond); and,

(8) **ORDERS** Plaintiff, after service has been made by the U.S. Marshal, to serve by mail upon Defendants Martinez and Banguilan, or if appearance has been entered by counsel, upon Defendants' counsel, a copy of every further pleading, motion, or other document submitted for the Court's consideration pursuant to Fed. R. Civ. P. 5(b). Plaintiff must include with every original document he seeks to file with the Clerk of the Court, a certificate stating the manner in which a true and correct copy of that document was served on Defendants or their counsel, and the date of that service. *See* S.D. Cal. CivLR 5.2. Any document received by the Court which has not been properly filed with the Clerk, or which fails to include a Certificate of Service upon Defendants or their counsel, may be disregarded.

**IT IS SO ORDERED.**

Dated: July 9, 2025

Hon. Robert S. Huie
United States District Judge